9039

DAGNALL v. DAGNALL.

(84 S. E. 870.)

HUSBAND AND WIFE. ALIMONY. SEVITIA. APPEAL AND ERROR.

1. HUSBAND AND WIFE—ALIMONY.—On an application for alimony and suit money by a wife who has voluntarily left her husband, the burden is upon her to show *prima facie* that he has inflicted on her such physical violence or personal indignity as would make her living with him as wife intolerable.

  *Gordon* v. *Gordon,* 91 S. C. 245, 74 S. E. 360, followed.

2. APPEAL AND ERROR—REVIEW—SEVITIA.—A finding of absence of *sevitia* affirmed, where the preponderance of evidence fails to show personal violence, cruelty or abuse on part of a husband toward his wife.

Before GARY, J., Laurens, April, 1914.　Affirmed.

Action by Elizabeth Dagnall against John T. Dagnall. From a decree denying an application for alimony, the plaintiff appeals. The facts are stated in the opinion.

*Mr. F. P. McGowan,* for appellant, cites: 1 McC. Ch. 205; 10 Rich. Eq. 163; 68 S. C. 125; Tiffany, Dom. Relations, 177, 179, 184; 3 Rich. 183; 2 DeS. 45; 4 DeS. 33; *Ib.* 571.

*Messrs. Simpson, Cooper & Babb,* for respondent.

March 29, 1915.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for alimony. The issues of law and fact were referred to a referee who found against the plaintiff. The plaintiff appealed to the Court of Common Pleas. In that Court the report was affirmed and from that judgment this appeal is taken. There are twenty-one exceptions. The appellant discusses in argument four questions, one of law and three questions of fact, as follows:

"It is respectfully submitted his Honor, the Circuit Judge, rested his view of the law upon the case of *Hair* v. *Hair,* 31 S. C. Eq. (10 Rich. Eq.) 163, overlooking the modification as contained in *Levin* v. *Levin,* 68 S. C. 125, 46 S. E. 945. The preponderance of the testimony shows:

1. That either the wife was driven away by the defendant in September, 1913, or leaving to visit a sick child the defendant was guilty of conduct unbecoming a husband that has prevented her return to him and has not provided a way for her return. He is guilty of desertion.

2. He is guilty of *sevitia,* by requiring of her such servitude that it tends to destroy her life or health, he does not furnish her with suitable food or sufficient clothing, he heaps upon her repeatedly cursing and abusive language which she cannot endure, and charges of spoliation of his papers.

3. He has been guilty of indecencies in the family circle, such as drunken sprees, mad fits, such as breaking up the furniture and throwing the dishes out of the kitchen window."

It is not necessary to discuss in this case the modification of the rule laid down in *Hair* v. *Hair.* The case of *Gordon* v. *Gordon,* 91 S. C. 245, 74 S. E. 360, states the rule by which this case can be determined as follows:

"If a wife voluntarily leaves her husband's home, as a condition of obtaining even temporary alimony and suit money, she must assume the burden of showing *prima facie* that her husband has inflicted on her such physical violence

20—100

or personal indignity as would make her living with him as wife intolerable."

It is undisputed that Mrs. Dagnall left her husband's home contrary to his wishes and in spite of his protest. The appellant's insuperable difficulty is found in the facts of the case.

The first complaint of the husband's conduct as set forth above, is that he treated her cruelly in refusing to take her to the railway station, or to furnish her the money to enable her to go to see her sick or dying grandchild. That the husband objected to her going is clear. The unreasonableness of his objection is not apparent. Both husband and wife had been married before and both had children by former marriages. Mr. and Mrs. Dagnall were well advanced in life when they married each other. They lived in comparative peace until a daughter of the plaintiff, Mrs. Agnes Barnett, came to visit them and her husband, Dan Barnett, followed her. While Mr. and Mrs. Barnett were staying at the defendant's home, the first open breach came, and Mrs. Dagnall left her husband's home. Mr. Dagnall went to Orangeburg and Georgetown to look for his wife. Mrs. Dagnall wrote to her husband from Georgia and said that his home was a good one, and that the trouble had been caused by her son-in-law, Mr. Barnett, and that Mr. Barnett should never enter her house again. Mr. Dagnall then went to Georgia for Mrs. Dagnall and brought her home. The telegram announcing the illness of her grandchild called her to Mr. Barnett's home. Mr. Dagnall knew that his wife in the Barnett home would be subject to the same disturbing influence that had once before broken up his home. It was not unreasonable, therefore, that he should have objected to the visit. His objection was neither physical violence nor personal indignity. Besides this, Mr. Dagnall testified that while he objected to the visit, he did make arrangements to take his wife to the station and would have paid her fare. That his horse had run away and he

was afraid to drive it and went over to the house of his son-in-law and borrowed his horse, but when he returned his wife had left his home. That he followed her to a neighbor's house and told her he had borrowed a horse to take her to the station, and she replied that she had made her own arrangements and wanted no help from him or his son-in-law. The preponderance of the evidence is not in favor of the appellant on the first question of fact.

The appellant complains that while she had a goiter and was sick and nervous from it her husband required her to milk the cows, wash the clothes and scrub the floors; did not furnish her with suitable food or clothing and cursed and abused her, and charged her with spoliation of his papers. The record shows that the defendant is a man of very moderate means, but notwithstanding that, he did hire some one to milk a part of the time, and the milker did not come in bad weather. The failure of a servant to appear in bad weather does not appear to have been Mr. Dagnall's fault. It does not appear that he could have secured more efficient help. It does appear that he did not know how to milk a cow. It does appear by the plaintiff's testimony that Mr. Dagnall sometimes did the family washing with his own hands.

The plaintiff testified that once she applied to him for some money and he replied, "I caused him to spend all his money on me and he had to go back without shoes, and I felt mighty bad about it, and told him I would do without 'postum' until he could buy him some shoes." The evidence of the truth of his statement must have been easily accessible, and if untrue, her remorse was unnecessary.

Some of this record (typewritten) is almost unreadable, but as best we can make it out the record only tends to show that on one occasion Mr. Dagnall came home under the influence of whiskey and on that occasion he broke up some furniture and cursed, but does not show that he, even then,

offered his wife any personal violence or cursed and abused her.

This disposes of the third specification and the judgment appealed from is affirmed.