## 10675

### DAWSON v. TORRE *ET AL.*

#### (108 S. E. 101).

1. DIVORCE—DIVORCE DECREE RENDERED IN FOREIGN STATE MUST BE RECOGNIZED IN SOUTH CAROLINA.—Where decedent, who owned land in South Carolina, married in Maryland, a judgment of divorce rendered in Maryland on due service will be recognized in South Carolina, even though the Courts of South Carolina cannot grant a divorce for full faith and credit must be given by the Courts of one State to judgments of another.

2. DOWER—DIVORCE BARS DOWER.—Where plaintiff, who was married in Maryland, in that State procured a divorce from her husband, who owned lands in South Carolina, such judgment of divorce, being binding on the South Carolina Courts under the full faith and credit clause, will bar plaintiff from recovering dower in South Carolina lands of her former husband.

Before SHIPP, J., Charleston, January, 1919.   Affirmed.

Action by Mary S. Dawson against Thomas Della Torre and Arthur Lynah, as executors, &c., under the will of John L. Dawson, deceased, and others.   From order sustaining a demurrer to the complaint, the plaintiff appeals.

The decree referred to follows:

This is an action for recovery of dower in certain property now owned by the several grantees and devisees of plaintiff's deceased husband, from whom she has been granted a divorce a vincule matrimonii by a Court of general jurisdiction in the State of Maryland, where the plaintiff and her husband were married.

The case is now before me on a demurrer to the complaint.   It is admitted by counsel for plaintiff that the divorce granted by the Court in Maryland is valid and binding in that State, but it is claimed not to bind the defendant in this State, nor on plaintiff so far as her dower is concerned.

The complaint alleges facts which would entitle the plaintiff to dower in the premises described in the complaint if

NOTE: On the effect of foreign divorce upon dower, see notes in 59 L. R. A. 181; 41 L. R. A. (N. S.) 219.

she had been the wife of the deceased husband at the time of his death or if she had not been legally divorced by the Maryland Court in July, 1906.

The sole question, therefore, before me now is whether or not the judgment of absolute divorce granted by the Court in Maryland as aforesaid is binding on the plaintiff herein to the extent of depriving her of her dower interests in the property of her deceased husband situated in South Carolina, where the husband had his legal residence at the time of his marriage to plaintiff on December 24, 1890, in the city of Baltimore, Md., until the date of his death on February 23, 1917.

The plaintiff alleges in her complaint, paragraph 8, "that said Dr. John L. Dawson, the defendant in said cause, having never had a domicile in Maryland and having been served only with process by appointment in a railroad station in Baltimore while passing through, was not subject to the jurisdiction of said Court in Maryland, and was not bound in South Carolina by said proceedings in Maryland, and this plaintiff alleges that she has never remarried." This allegation is a mere conclusion of law. The fact that he was not a resident of Maryland and was served only while passing through, the jurisdiction is not sufficient allegation of fact to show that the service was not good. If he had been brought into the jurisdiction under legal process in another action, he might not have been subject to process in that action wherein he was then served, but nothing appears here to show that he was not there of his own volition. Certainly there was no allegation tending to show a collusion, for that implies a fraud on the Court; so, if the defendant in that action, Dr. Dawson, had come within the jurisdiction of the Court for the purpose of placing himself within the jurisdiction or for the purpose of allowing himself to be legally served with process, it would have signified no collusion.

If the plaintiff was the legal wife of Dr. John L. Dawson at the time of his death, she would now be entitled to all she claims in her complaint. But according to her own admissions in her complaint and through counsel, she was not the legal wife of Dr. Dawson at his death nor had she been his wife since the decree of the Court granting an absolute divorce in July, 1906.

Now then, since it has been established that these parties were divorced absolutely by a Court of general jurisdiction in another State of the Union, this State and its Courts are compelled to "give full faith and credit" to the judgment of such Court in a sister State, and the only remaining question that could enter into our inquiry would be whether such Court had jurisdiction of the cause and the parties.

In the case of *Thompson v. Whitman,* 18 Wall., 457; 21 L. Ed., 897, cited as authority in *McCreery v. Davis,* 44 S. C., 195; 22 S. E., 178; 28 L. R. R., 655; 51 Am. St. Rep., 794, we find the following language, to-wit: "The record of a judgment rendered in another State may be contradicted as to the facts necessary to give the Court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist. Want of jurisdiction may be shown either as to the subject-matter of the person, or, proceedings in rem, as to the thing." In the same case it was held that the want of jurisdiction of the Court by which a judgment rendered in any State may be questioned in a collateral proceeding in another State, notwithstanding the provisions of the fourth article of the Constitution and the law of 1790, and notwithstanding the averments contained in the record of the judgment itself." Again, in *Hanley v. Donoghue,* 116 U. S. 4, 6 Sup. Ct., 244; 29 L. Ed., 535, cited in the case of *McCreery v. Davis, supra,* we find this language, to-wit: "Judgments recovered in one State of the Union, when proved in the Courts of another, differ from judgments

recovered in a foreign country in no other respect than that of not being re-examinable upon the merits, nor impeachable for fraud in obtaining them, if rendered by a Court having [competent] jurisdiction of the cause and of the parties."

That our State, aside from its duty under the Federal Constitution, recognizes divorces granted by Courts of other States, there can be no doubt. We find in our Criminal Code, § 381, relating to bigamy, the following, to-wit: "Whoever, being married, and whose husband or wife has not remained continually for seven years beyond the sea, or continually absented himself or herself, the one from the other, for the space of seven years together, the one of them not knowing the other to be living within that time, * * * or whose marriage has not been annulled by decree of a competent tribunal having jurisdiction both of the cause and the parties, shall marry another person," etc. Again we find a provision very much similar in Section 3754 of our Civil Code, relating to bigamous marriages, providing that marriages of persons having a husband or wife living are void, adding a proviso as to "any person who shall be divorced." This statute was referred to in the case of *McCreery v. Davis, supra,* and the Supreme Court, in discussing it, said that, while there were no cases in our reports construing it, yet it was evidently meant to mean only "valid" divorces, and since neither the State of New York, where the marriage was performed, nor the State of South Carolina, where one of the parties lived (the defendant), recognized as a cause for divorce that for which that divorce was granted, the statute would not avail anything. This language would indicate clearly that, had that divorce been granted on grounds recognized in New York, where the marriage was performed, and the Court had had jurisdiction of the persons, this State would have recognized the judgment of the State granting this divorce. Now in the case at bar the marriage was performed in the State of Maryland, and the

Court granting the divorce was a Court of the State of Maryland, and jurisdiction of the defendant had been acquired, for he was served in the State of Maryland.

In the case of *Haddock v. Haddock,* 201 U. S., 567, 26 Sup. Ct., 527; 50 L. Ed., 868; 5 Ann. Cas., 1, Chief Justice White (then Associate Justice), in laying down certain propositions of law which he says were "irrevocably concluded by previous decisions of this Court" goes on in his opinion, using this language, to-wit: "It has, moreover, been decided that where a bona fide domicile has been acquired in a State by either of the parties to a marriage, and a suit is brought' by the domiciled party in such State for divorce, the Courts of that State, if they acquire personal jurisdiction also of the other party, have authority to enter a decree of divorce, entitled to be enforced in every State by the full-faith and credit clause. *Cheever v. Wilson,* 9 Wall, 108 [19 L. Ed. 604]."

It seems, therefore, well settled that where a marriage has been contracted in a State, and afterwards in that State where one of the parties is domiciled, a suit for divorce is begun and the other party is personally served, the judgment of that Court is binding not only on the parties, but on every Court in every State of the Union where that judgment is properly pleaded or admitted by the adverse party to exist.

The case at bar has all the essential elements which make the judgment of absolute divorce granted by the Maryland Court valid and binding on the parties, their privies, and the Courts of this State. Therefore I sustain the demurrer to the complaint in this action and dismiss the complaint, and it is so ordered.

*Messrs. Willis & Willis* and *Mitchell & Smith,* for appellant. *Mitchell & Smith* cite: *Matters affecting the title to real property are goverened by the law of the locus*: 44 S. E., 643, (N. C.); 61 L. R. A., 898; 80 Pac., 556,

(Wash.); 178 U. S., 186; 44 L. Ed., 1028; 247 U. S., 16; 245 U. S., 412, 416; 12 C. J., 456. *Law of State where the land lies controls dower right*: 111 S. C., 523; 30 N. E. 661, (N. Y.); 15 L. R. A. 542; 11 N. E. 118, (O.); 98 N. E. 488; 14 Cyc. 888; 34 S. C. L. 562; 7 S. C. 150, 152; 14 Cyc. 936. *Matrimonial status is not a property right*: 12 S. C. 29. *Divorce decree in Maryland has no extraterritorial effect*: 107 Md. 335-6. *"Full faith and credit" clause does not require this State to permit a divorce decree of a sister State to alter its own laws as to dower*: 178 U. S. 186; 47 Atl. 376, (Del.); 114 Ill. App. 655; 36 S. C. 367, (W. Va.); 30 N. E. 661; Dec. Dig. "Judgments," Sec. 822; 4 Cent. Dig., Sec. 1490. *Dower law in S. C.*: 1 Civ. Code, 1912, Secs. 3469-78, 3485-93. *Dower attaches to any lands seized by husband during coverture*: 34 S. C. L. (3 Strob.) 562. *And is paramount to any person claiming under the husband by a subsequent act*: 94 S. C. 492, 494. *Elopement only method of divestment, other than voluntary renunciation*: 44 S. C. 195, 226; 56 S. C. 173; 36 L. R. A. 517. *Renunciation prior to vesting only thing that will estop wife*: 16 S. C. 91; 52 S. C. 108; 53 S. C. 2; 63 S. C. 126; 87 S. C. 47; 89 S. C. 175; 96 S. C. 435; 44 S. C. 195; 41 S. C. 363; 18 S. C. Eq. 275; 18 S. C. Eq. 222. *Right attaches with marriage and seizing*: 88 S. C. 286; 94 S. C. 492; 28 S. C. 580; 31 S. C. 547; 34 S. C. L. 562. *After vesting wife can convey or assign it by deed*: 29 S. C. 501; 35 S. C. 88. *Valid decree in sister State must be recognized here so far as it affects status of the parties*: 21 S. C. Eq. (2 Strob.), 174; 80 S. C. 94; 75 S. C. 145. *In reply*: *Power to grant a divorce is statutory*: 19 C. J. 23, 462, 504, 506; 12 S. C. 30; 20 S. C. Eq. (1 Strob.), 387.

*Messrs. H. W. Connor* and *Nathans & Sinkler,* for respondents, Thos. Della Torre et al., as Executors, &c., and *Joseph W. Barnwell* for Charleston Library Society, cite: *"Full faith and credit" clause construed and in what cases of*

*divorce, a State is bound to recognize decree of another State*: 201 S. C. 567; 181 U. S. 155; 181 U. S. 175; 198 U. S. 317; 181 U. S. 183; 21 How. 582; 9 Wall. 123; 215 U. S. 909; 210 U. S. 231; 226 U. S. 551; 44 S. C. 195. *Personal service of defendant in State where divorce is granted is essential*: 44 S. C. 195.. *Divorce bars dower*: 4th Kent. 55; 4 Barb. 192; 1 Wash. Real Prop. 243; 14 Cyc. 943; 111 U. S. 526; 10 Mass. 260; 110 Mass. 463; 10 Ohio 396; 20 Ohio 454; 2 Bishop Mar. & Div., Sec 706, 712; 2 Strob. Eq. 175. *Foreign divorces recognized here*: 76 S. C. 145; 80 S. C. 94; Crim. Code, 1912, Sec. 381; 1 Civ. Code, 1912, Sec. 3754.

June 30, 1921.

The opinion of the Court was delivered by Mr. Justice Fraser.

The case contains the following statement:

"This is an appeal from an order sustaining a demurrer to the complaint and dismissing the complaint.

"The summons was served on December 15, 1917. The complaint is for dower in lands in South Carolina, and alleges that the plaintiff-appellant, Mary S. Dawson, was married to the late Dr. John L. Dawson at Baltimore, Md., on December 24, 1894, Dr. Dawson being and having been for many years a resident of Charleston, S. C., and the plaintiff and her husband, after the marriage, resided in Charleston together as the place of their matrimonial domicile until the 10th of May, 1903, at which time the plaintiff and Dr. Dawson separated and lived apart; that on May 17, 1906, plaintiff filed a bill for divorce against Dr. Dawson on the ground of abandonment in the Circuit Court for Hartford County, in the State of Maryland, and a decree for divorce was granted by said Court on July 24, 1906, and the plaintiff has never remarried; that after the marriage and during the period of coverture the said Dr.

Dawson was seized in fee and possessed of certain described pieces of real property in Charleston, S. C., and there died, a resident of Charleston, on February 23, 1917, and the terms of his will and his disposition of his property to certain of the defendants are set forth.

"The answers of the defendants who answered vary in form, but all set up the divorce granted by the Maryland Court as an affirmative defense. On February 16, 1918, the plaintiff demurred to this affirmative defense set up in the various answers on the ground that it did not state facts sufficient to constitute a defense. Thereafter, on April 11, 1918, the defendants, Della Torre and Lynah, executors and trustees, served a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.• Still later and five days before the hearing, to wit, on November 27, 1918, the defendant, Charleston Library Society, served an oral demurrer to the complaint. The specifications of all these demurrers are hereinafter set forth in this record.

"The main issue was whether or not the Maryland divorce operated as a bar to the plaintiff's right to dower in land in South Carolina of which Dr. Dawson was seized during the coverture.

"The demurrers were argued before Judge Shipp at Charleston, and on January 8, 1919, his decree was filed sustaining demurrer to and dismissing the complaint. From that decree this appeal is taken."

The issue is simple and entirely free from complications. The marriage was contracted in Maryland under the laws of that State. In Maryland marriages are contracted in contemplation of their possible dissolution for certain causes. The Maryland Court, after personal service on the deceased in Maryland, and upon what we must assume a proper showing that a cause existed, dissolves the marriage relation. While this was con-

tracted in view of a possible dissolution, the South Carolina Court could not have dissolved it for any cause. The South Carolina Courts must, however, under the full-faith and credit doctrine, recognize the dissolution affected by the same authority that made it. It is hard to imagine a clearer case for the operation of the full-faith and credit doctrine than this. Something has been said about a collusive service on the husband. If true, it can do the plaintiff no good. She cannot profit by her own wrong. So far as this case is concerned and between these parties, the status, and everything connected with it, was absolutely destroyed, so far as this record shows.

The cases on the subject are many, and to review them would be unprofitable. It generally is unprofitable. In *McCreery v. Davis,* 44 S. C. 195; 22 S. E. 178; 28 L. R. A. 655; 51 Am. St. Rep. 794, the divorce was void for want of jurisdiction, and the statements largely dicta. Marriage is frequently spoken of as a contract, but it is not. It has no element of a contract. It is a status. A man and woman may contract to assume the status of marriage, but, whether it be regarded here as a contract or a status, the result is the same. The contract was rescinded. The status was destroyed. Our statutes, both civil and criminal, recognize the fact that the relation may be destroyed absolutely. A divorce, meaning a valid divorce, of course, relieves the parties from the penalty of bigamy under the criminal law, and under the civil statute allows the parties to marry again. There is no limit to the number of remarriages in the statute. To allow an accumulation of dowers, founded on the same right, is a reductio ad absurdum. They are all good, or none. The Maryland divorce of a Maryland marriage destroys dower, and the judgment appealed from is affirmed.

Let Judge Shipp's decree be reported.