## 11251

### SCHEPER *ET AL.* v. SCHEPER *ET AL.*

#### (118 S. E., 178)

1. Divorce—Foreign Divorce a Mensa et Thoro Leaves Marriage Bond Intact.—A judgment of a North Carolina Court granting a divorce a *mensa et thoro* held to leave intact the legal bond of a marriage contracted in South Carolina, notwithstanding husband's purported second marriage in Georgia.

2. Divorce—Foreign Decree Recognized Only to Extent Required by Full Faith and Credit Clause.—A foreign decree purporting to dissolve a marriage contracted in South Carolina will be recognized only to the extent required by the full faith and credit clause of the Federal Constitution.

3. Divorce—Foreign Divorce Decree a Mensa et Thoro and Subsequent Conduct of Husband Precluded Husband's Claim to Distributive Share of Wife's Property.—While the matrimonial domicile was in North Carolina, a decree of the Court of that State granted a divorce a *mensa et thoro* of a marriage contracted

in South Carolina. Under Revisal N. C. 1905, §§ 9, 2102, 2108, and 2111 (C. S., §§ 12, 2519, 2516, and 2524, and Section 1654), such a decree resulted in the forfeiture of husband's marital rights in his wife's property. The husband became a resident of Georgia and there married a second time. The first wife died intestate leaving an unattested document by which she showed that she thought that her husband had forfeited all his rights in her property. *Held,* that such faith and credit will be given to the North Carolina decree as will preclude the husband from claiming under Civ. Code 1912, § 3555, a distributive share in the first wife's South Carolina property.

4. DIVORCE—TERMS OF LIMITED DECREE MEASURE OF RIGHTS AND DUTIES OF PARTIES.—While a limited divorce does not dissolve a marriage, it substitutes for the common-law obligation arising from the marriage the terms of the judgment, which is thereafter the measure of the rights and duties of the parties.

5. DIVORCE—FOREIGN DIVORCE DECREE ENTITLED TO FULL FAITH AND CREDIT, COURT HAVING JURISDICTION OF PARTIES AND SUBJECT MATTER. —A foreign judgment in a divorce action rendered by a competent Court having jurisdiction of the parties and the subject matter is entitled under the full faith and credit clause to such force and effect in South Carolina Courts as may properly be accorded the judgment of another State under the rules governing the extraterritorial effect of such judgments.

6. JUDGMENT—JUDGMENT FINAL WHERE RENDERED CONCLUSIVE IN OTHER STATES.—Generally, a judgment which is final in the State where rendered is conclusive in all other States in a suit between the same parties or their privies involving an issue determined in the former suit.

7. DIVORCE—JUDGMENT FIXING MARITAL STATUS AND PROPERTY RIGHTS HELD CONCLUSIVE.—A judgment of a North Carolina Court fixing the marital status and rights of a husband with respect to his wife's separate property is binding and conclusive in that State.

8. DIVORCE—DECREE OF COURT OF SISTER STATE FIXING PROPERTY RIGHTS GIVES SAME EFFECT AS IN STATE OF RENDITION.—Under the law of comity, a judicial determination of a competent Court of a sister State, whereby the marital status of a husband was denatured of its efficacy to give rise to a legal right in the wife's separate property, will be given the same force and effect in this jurisdiction as in the State of its rendition.

9. HUSBAND AND WIFE—HUSBAND'S PROPERTY RIGHTS SUBJECT TO ABOLITION.—A husband's contingent rights in his wife's property arising out of the marriage are not such vested interest as may not be changed, modified, or wholly abolished.

10. COURTS—COURT BY ACTING ON PERSON MAY ACT INDIRECTLY ON REALTY IN ANOTHER STATE.—A Court of equity through its instrumentality to act on the person may indirectly act on realty in another State.

11. MARRIAGE—REMARRIAGE OF HUSBAND IN ANOTHER STATE RAISES PRESUMPTION OF DECREE PURPORTING TO DISSOLVE SOUTH CAROLINA MARRIAGE.—The fact that, after the rendition of a North Carolina judgment granting a limited divorce to the parties of a South Carolina marriage, the husband became a resident of Georgia and married another woman there, do not raise a presumption in South Carolina Courts that the second marriage was valid, but will support the presumption that the second marriage was entered into after husband had secured in the Georgia Courts a decree purporting to dissolve the South Carolina marriage.

12. ESTOPPEL—PARTY SECURING OR ACCEPTING BENEFIT OF VOID JUDGMENT ESTOPPED FROM ASSERTING ITS VALIDITY.—While, generally, a void judgment neither binds nor bars any one, yet a party who procures or accepts the benefits of such a judgment is estopped to assert its invalidity.

Before PRINCE, J., Beaufort, 1922. Affirmed.

Suit for partition by F. W. Scheper, in his own right and as executor of the will of F. W. Scheper, deceased, and others against Lee Marscher Scheper, the widow, and Lee Scheper and others, the infant children of Henry E. Scheper, deceased, and Edna M. Tindall, the infant daughter of Minnie H. Tindall, W. R. Tindall, and another, as executor of the will of F. W. Scheper, deceased. From a decree favorable to defendant Edna M. Tindall on an issue joined between that defendant and defendant, W. R. Tindall, the latter defendant appeals.

*Messrs. Erwin, Erwin & Nix* and *W. J. Thomas,* for appellant, cite: *North Carolina divorce does not divest husband of interest in property in South Carolina:* 201 U. S., 562; 215 U. S., 1; 16 Pet., 25; 6 Cranch., 148; 2 Wall., 237; 10 Wall., 464; 96 U. S., 627; 99 U. S., 308; 47 Fed., 852; 44 S. C., 196; 1 Hill, L., 7; 110 S. C., 253. *Limited divorces.* 9 R. C. L., 487; 95 N. C., 281; 93 N. C., 418; Ann. Cas., 1914-B, 655; 80 S. E., 178.

*Messrs. Talbird & Jenkins,* for respondents, cite: *Divorce a mensa et thoro in North Carolina divests husband of interest in wife's property:* 108 S. E., 101; N. C. Laws 1905, Sec. 9. *Presumption of legality of marriage:* 2 Barn & Ald., 386; 5 Rich. L., 460; 102 S. E., 35; 26 Cyc., 877; 9 R. C. L., 244; 14 L. R. A., 543; 20 Tex., 740; 29 Mo., 259; 137 Ill., 386; 4 A. L. R., 46; 10 R. C. L., 389, Sec. 139.

June 12, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

In 1898, W. R. Tindall and Minnie H. Scheper were married at Beaufort, S. C. Thereafter, they resided in this State for about nine years. In 1907, they removed to North Carolina, where the husband's "employment took him." They lived together as husband and wife in the State of North Carolina until 1910, when Minnie H. Tindall brought suit and procured a divorce a *mensa et thoro* under the laws of that State; the decree awarding her alimony and the custody of her minor daughter, Edna. She then returned, with her child, Edna, to Beaufort, S. C., where she resided until her death in November, 1913. Shortly after the rendition of the judgment in the North Carolina divorce proceeding, W. R. Tindall removed to the State of Georgia, where he has ever since resided. He married in the State of Georgia another woman, by whom he had at least one child, before the death of Minnie H. Tindall.

Under the will of her father, F. W. Scheper, who died in February, 1913, Minnie H. Tindall became entitled to an undivided share in her father's estate. She died intestate as to this property, but prior to her death on November 14th, following a surgical operation, she wrote and signed a paper, dated November 7, 1913, entitled "My Last Wishes," which she inclosed in an envelope and indorsed,

"For Addie, to be opened right after my death." This unwitnessed paper gives directions as to the writer's funeral and as to the disposition of certain articles of wearing apparel, and contains the following:

"All my belongings what Papa left me is now Edna's and at her death I want it divided even among my family sisters and brothers if she is married then it must go to her children."

The question here presented is as to the right of W. R. Tindall to take the husband's distributive share of one-third (Section 3555, Civil Code 1912), in the intestate property of Minnie H. Tindall, deceased, and arises out of an issue joined between the daughter, Edna, and her father, W. R. Tindall, as parties defendant to a suit in equity for the partition of the estate of F. W. Scheper among the devisees under his will and their heirs-at-law thereto entitled, the subject matter and scope of which will more fully appear by reference to the decision of this Court on a former appeal herein, reported in 115 S. C., 421; 106 S. E., 33. The present appeal is by W. R. Tindall from a decree of Hon. George E. Prince, Circuit Judge, holding and adjudging that—

"Edna M. Tindall, the daughter of Minnie H. Tindall, deceased, is the sole heir-at-law of her father, and is, therefore, entitled to all of the property of every kind left by her."

That conclusion is based on findings and views which are thus stated in the Circuit decree:

"The answer of the defendant, W. R. Tindall, admits all of the material allegations of the complaint except so much thereof as alleges that he had forfeited all right to any interest in his first wife's property, or that by his conduct he was estopped from claiming same, or that the writing above referred to left by Mrs. Minnie H. Tindall conveyed her interest in the property to her daughter, Edna M. Tindall. The plaintiffs introduced in evidence the paper

left by Mrs. Minnie H. Tindall above referred to, a certified copy of the decree of divorce obtained in North Carolina, and of the proceedings in the Court, and certified copies of the laws of North Carolina in reference to the obtaining of divorces a *mensa et thoro* and the effect thereof on the rights of the divorced husband as to his deceased wife's property. Under that law it appears that without reconciliation prior to his wife's death he lost all interest in her property. The defendant introduced no testimony. The issues in this case are narrowed down to the single question: Is the defendant, W. R. Tindall, under the admitted facts in this case, entitled to a share of the property left by his first wife, Minnie H. Tindall, deceased? The writing left by her is not witnessed, and is, therefore, neither a deed nor a will. But W. R. Tindall could not have two wives living at the same time, and the law will presume that the second wife is his lawful wife, and should he have denied that she was his lawful wife, which he has not done, the burden rests upon him to prove it. This he has failed to do, nor has he attempted to do so."

The correctness of the conclusion of the Circuit Judge, as thus premised, is broadly challenged by exceptions which, in substance, advance two propositions: (1) That the marital bond, created by the South Carolina contract of marriage, had never been dissolved, and that at the death of Minnie H. Tindall the defendant, W. R. Tindall, was her lawful husband; and (2) that as such lawful husband he is not estopped to assert his legal marital right to take the husband's distributive share in the intestate property of his deceased wife in this State either (a) by reason of any force and effect that may properly be accorded the North Carolina judgment of divorce from bed and board, or (b) by his conduct subsequent to the rendition of said judgment in remarrying in the State of Georgia, etc. The foregoing contentions will be considered and discussed in the order stated.

First, as to the marriage bond: Under the well-settled law of this jurisdiction, there is no room for doubt that W. R. Tindall was the lawful husband of Minnie H. Tindall at the time of her death. That conclusion, in the state of the record here presented, requires no extended discussion. The marriage contracted by these parties in South Carolina could not be dissolved either by the consent of the parties, by the judgment of our Courts, or by the Act of our Legislature. Article 17, § 3, Constitution of 1895. Whether indissoluble by "the judgment of any foreign tribunal," as is broadly asserted by way of *dicta* in some of our earlier cases (*Duke v. Fulmer,* 5 Rich. Eq., 121. *Boyce v. Owens,* 1 Hill, 10), or not, certainly no such foreign decree or judgment of divorce purporting to dissolve a marriage contracted in this State will be accorded recognition except where and to the extent such recognition may be required by the full faith and credit clause of the United States Constitution. See *McCreery v. Davis,* 44 S. C., 195; 22 S. E., 178; 28 L. R. A., 655; 51 Am. St. Rep., 794. *Haddock v. Haddock,* 201 U. S., 562; 26 Sup. Ct., 525; 50 L. Ed., 867; 5 Ann. Cas., 1. *Atherton v. Atherton,* 181 U. S., 155; 21 Sup. Ct., 544; 45 L. Ed., 794; Note 5 Ann. Cas., 26. No judgment or decree of any foreign tribunal which even purported to dissolve the bonds of the marriage here in question was introduced in evidence. The judgment of the North Carolina Court, granting a divorce a *mensa et thoro,* left the legal bond of marriage intact. 19 C. J., 157. *Castlebury v. Maynard,* 95 N. C., 281. *Taylor v. Taylor,* 93 N. C., 418; 53 Am. Rep., 460. *Cooke v. Cooke,* 164 N. C., 272; 80 S. E., 178; 49 L. R. A. (N. S.), 1034. *Young v. Naylor,* 1 Hill, Eq., 383. No presumption properly predicable upon the husband's admitted second marriage in Georgia can be permitted under the long-established public policy of this State, to supply the place of the clear proof in due form of such a foreign judgment of divorce a

*vinculo matrimonii* as might be entitled by virtue of such Court's jurisdiction of the person of both parties and of the subject matter to recognition in the Courts of this State under the full faith and credit clause of the Federal Constitution. See *McCarty v. McCarty,* 2 Strob., 6; 47 Am. Dec., 585. *Hallums v. Hallums,* 74 S. C., 407; 54 S. E., 613. *McCreery v. Davis,* 44 S. C., 195; 22 S. E., 178; 28 L. R. A., 655; 51 Am. St. Rep., 794. *Haddock v. Haddock,* 201 U. S., 562; 26 Sup. Ct., 525; 50 L. Ed., 867; 5 Ann. Cas., 1. It follows that appellants' contention that W. R. Tindall was at the death of Minnie H. Tindall her husband *de jure* must be sustained.

But appellants' second proposition as to estoppel cannot be sustained. In that connection, the force and effect that may properly be extended to the North Carolina judgment of divorce a *mensa et thoro* will first be considered. A duly authenticated copy of the record of the proceedings brought by Minnie H. Tindall against W. R. Tindall in the Superior Court of Forsyth County, North Carolina, seeking a divorce a *mensa et thoro,* was introduced in evidence, together with certain of the Statutes of that State bearing upon the marital property rights of the husband from whom the wife has obtained a divorce of that character. At the time of the commencement of these proceedings in the Spring of 1910, it is not disputed and the record discloses no room for doubt that the *bona fide* matrimonial domicile of the parties was and had been for more than two years in the State of North Carolina. The defendant in that suit, W. R. Tindall, personally appeared and defended. The issues of fact were submitted to a jury, which found that the defendant (husband) had offered "such indignities to the person of the plaintiff (wife) as to render her condition intolerable and life burdensome." Thereupon the Court rendered a judgment under date of September 21, 1910, (1) granting the plaintiff a divorce from the bed and board of her husband as

prayed for, (2) awarding her the custody of her minor child, Edna, and (3) ordering and adjudging that the defendant pay to plaintiff the sum of $33.33 per month, one-third of his net income, alimony for the support of the plaintiff and the infant daughter, Edna, from October 1, 1910. The Statute law of North Carolina in force at the time of the rendition of said judgment and at the time of the death of Minnie H. Tindall, the wife, provided that if a wife "shall have obtained a divorce a *mesna et thoro,* and shall not be living with her husband at her death, * * * he shall thereby lose all his right and estate of whatever character in and to her personal property, and all right to administer on her estate." (Section 9, Revisal; Section 12, Consol. Stat.), and that "if a divorce from bed and board be granted on the application of the wife, he [the husband] shall thereby lose all right to curtesy in the real property of the wife, and also all right and estate of whatever character in and to her personal property, as administrator, or otherwise; and also any right and estate in the property of the wife which may have been settled upon him solely in consideration of the marriage by any settlement before or after marriage," etc. (Section 2111, Revisal; Section 2524, Consol. Stat.). Under the statutory law of North Carolina the husband appears not to take a distributive share in fee in the separate intestate real estate of the wife (Chapter 29, Consol. Stat.) as in this State, but is entitled to take as tenant by the curtesy consummate (Section 2102, Revisal; Section 2519, Consol. Stat.). The doctrine of the estate by entirety as recognized and applied in North Carolina (*Freeman v. Belfer,* 173 N. C., 581; 92 S. E., 486; L. R. A. 1917E, 886) has no relevancy here, inasmuch as the right by survivorship there involved has no application to the wife's separate estate. For the purposes of the present inquiry, it is sufficient, therefore, to say that such investigation as we have been able to make of the statutes and judicial decisions of

North Carolina discloses no ground for impeaching the conclusion of the Circuit Judge that under the law of that State the effect of the judgment of divorce a *mesna et thoro,* obtained by Minnie H. Tindall and remaining unaffected by a subsequent reconciliation, was to deprive the husband of all his marital rights of whatever character in and to his wife's separate property, both personal and real. *High v. Bailey,* 107 N. C., 70; 12 S. E., 45. *Joyner v. Joyner,* 151 N. C., 181; 65 S. E., 896.

Reading the express statutory provisions referred 4, 5 to into the judgment of the North Carolina Court, we have a clear-cut judicial determination of the forfeiture for cause of the husband's marital rights in his wife's property—a forfeiture subject to be defeated only by the wife's condonation and resumption of cohabitation. *Taylor v. Taylor,* 112 N. C., 134; 16 S. E., 1019. While "a limited divorce does not dissolve the marriage, it substitutes for the common-law obligation arising from the marriage the terms of the judgment, which is thereafter the measure of the rights and duties of the parties." 19 C. J., 185. It appearing from the record of the North Carolina proceedings, as we have seen, that the judgment therein rendered was the decree of a competent Court having jurisdiction both of the parties and of the subject matter, there can be no question that it is entitled to such force and effect in the Courts of this State under the full faith and credit clause of the United States Constitution as may properly be accorded the judgment of another State under established principles of law and equity governing the extraterritorial effect of such judgments. 19 C. J., 362, § 824; 15 R. C. L., 925, § 405. *Haddock v. Haddock,* 201 U. S., 562; 26 Sup. Ct., 525; 50 L. Ed., 867; 5 Ann. Cas., 1. *Harding v. Harding,* 198 U. S., 317; 25 Sup. Ct., 679; 49 L. Ed., 1066. *Atherton v. Atherton,* 181 U. S., 155; 21 Sup. Ct., 544; 45 L. Ed., 794. *Napier v. Gidiere,* Speers, Eq., 215; 40 Am. Dec., 613. *Dawson v. Torre,* 116 S. C.,

338; 108 S. E., 101. *Shirley v. Parris* (S. C.), 113 S. E., 788. *Goodyear v. Reynolds,* 117 S. E., 538, recently filed.

Generally, a judgment which is final and conclusive 6-8 in the State where rendered is conclusive in all other States in a suit between the same parties or their privies involving an issue determined in the former suit. 15 R. C. L., 928. *Carpenter v. Strange,* 141 U. S., 87; 11 Sup. Ct., 960; 35 L. Ed., 640. *Roller v. Murray,* 71 W. Va., 161; 76 S. E., 172; L. R. A. 1915F, 984; Ann. Cas., 1914B, 1139. In so far as the judgment of the North Carolina Court was a decree for the payment of alimony, there may be some question as to whether it was a final judgment, that is, a judgment not subject to review and modification by the Court wherein rendered. *Sistare v. Sistare,* 218 U. S., 1; 30 Sup. Ct., 682; 54 L. Ed., 905; 28 L. R. A. (N. S.), 1068; 20 Ann. Cas., 1061. *Lynde v. Lynde,* 181 U. S., 183; 21 Sup. Ct., 555; 45 L. Ed., 810. *Barber v. Barber,* 21 How. (U. S.), 582; 16 L. Ed., 226. But, in so far as that judgment determined and fixed the marital status and rights of the husband with respect to the wife's separate property, it would clearly appear to be such a judgment as would be binding and conclusive in that State. Thus, if this case were pending in the Courts of North Carolina and involved the wife's separate property there situated, we apprehend there could be no doubt that upon the admitted facts of this appeal record the judgment would effectually and conclusively bar the husband's claim to any interest or estate in property of the deceased wife. Since, however, a State cannot through its Courts extend its coercive power to, nor effect by judicial determination, property outside of its own territory, it may be conceded that the judgment of the North Carolina Court could have no direct operation upon real property in this State and could not *per se* affect the legal or equitable title thereto, and hence that it is not entitled to recognition and enforcement under the full faith and credit clause of the Federal Constitution. *Fall v. Eas-*

*tin,* 215 U. S., 1; 30 Sup. Ct., 3; 54 L. Ed., 65; 23 L. R. A. (N. S.), 924; 17 Ann. Cas., 853. *Bullock v. Bullock,* 52 N. J. Eq., 561; 30 Atl., 676; 27 L. R. A., 213; 46 Am. St. Rep., 528. *Fall v. Fall,* 75 Neb., 104; 106 N. W., 412; 113 N. W., 175; 121 Am. St. Rep., 767. But, under the law of comity, as the judicial determination of a competent Court of a sister state, whereby the marital status of the husband was denatured of its efficacy to give rise to or support a legal right in the wife's separate property, we see no reason why that judgment should not be given the same force and effect in this jurisdiction as in the State of its rendition.

The fundamental law of this State prohibiting the dissolution of the marriage bond, and our long-established public policy forbidding the recognition of divorce, may not be invoked to defeat the very object of that law and policy—which is primarily to promote and compel the full discharge by both husband and wife of the obligations and duties of the marriage relation by declining to permit or countenance a legal dissolution of the bond, which imposes those duties and obligations, during the life of either husband or wife. Whether marriage is to be regarded as essentially a contract, as maintained by Mr. Justice Pope in *McCreery v. Davis,* 44 S. C., 195; 22 S. E., 178; 28 L. R. A., 655; 51 Am. St. Rep., 794, or as a status and not a contract, as declared by Mr. Justice Fraser in *Dawson v. Torre,* 116 S. C., 346; 108 S. E., 101, is in this connection a question of purely academic interest. From the standpoint of the State and its public policy, it is a great public institution, sanctioned, regulated and safeguarded for the common good. Property is neither solely nor primarily the object of marriage; it is but an incident which may or may not attach, and which, as between husband and wife, is subject to control and regulation by general law on such terms as public policy may dictate. 13 R. C. L., 1008. *Baker v. Kilgore,* 145 U. S., 487; 12 Sup.

Ct., 943; 36 L. Ed., 786; note 84 Am. St. Rep., 437. A husband's contingent or expectant rights in the wife's property arising out of the marriage are not such vested interests as may not be changed, modified, or wholly abolished. *Allen v. Hanks,* 136 U. S., 300; 10 Sup. Ct., 961; 34 L. Ed., 414. *Baker v. Kilgore, supra. Richardson v. Richardson,* 150 N. C., 549; 64 S. E., 510; 134 Am. St. Rep., 948; 13 R. C. L., 1008. Obviously, a public policy which declared the marriage tie indissoluble and at the same time withheld from the Courts the means of promoting and enforcing the discharge of marital obligations, by adjusting as between husband and wife the incidental rights of property arising from the marriage relation, would be open to the criticism of indefensible inconsistency.

That criticism, as we think, may not be justly leveled against the public policy of this State. The doctrine that rights to property dependent upon the marital relation, like all other legal rights, are within the control and are subject to the regulation and adjustment of Courts of Equity, has been accorded recognition from the beginning of our judicial history. Thus the jurisdiction of the Courts of Equity to enforce by a decree for alimony the common-law obligation of the husband to support his wife was early recognized and has been consistenly exercised. *Jelineau v. Jelineau,* 2 Desaus, 50. *Prather v. Prather,* 4 Desaus, 33. *Devall v. Devall,* 4 Desaus., 79. *Taylor v. Taylor,* 4 Desaus., 167. *Threewits v. Threewits,* 4 Desaus., 569. *Rhame v. Rhame,* 1 McCord, Eq., 197; 16 Am. Dec., 597. *Prince v. Prince,* 1 Rich. Eq., 282. *Hair v. Hair,* 10 Rich. Eq., 172. *Smith v. Smith,* 50 S. C., 65; 27 S. E., 545; 51 S. C., 384; 29 S. E., 227. *Sams v. Sams,* 117 S. C., 312; 108 S. E., 921. That the execution of such a decree involves the divesting *protanto* of the husband's legal right to his earnings and income from his property for the benefit of his wife is apparent. At common-law the husband became seized of a legal freehold estate in his wife's land, and acquired the

legal title to the wife's personalty reduced to possession. In a very early case, *Greenland v. Brown,* 1 Desaus., 196 (1789), the Court of Equity granted an injunction against a husband, restraining him from disposing of the wife's property and requiring him to convey it to a trustee for their joint use under proper limitations. Prior to the abolition of the common-law rule in this State, the wife's equity to a settlement, a "mere creature of the Courts of Equity" (13 R. C. L., 1072), whereby, in derogation of the husband's common-law right, an adequate portion of her own fortune was settled upon the wife for the maintenance of herself and children, was uniformly recognized and enforced by our Courts. *Wardlaw v. Gray,* 2 Hill, Eq., 644. *Thomas v. Sheppard,* 2 McCord, Eq., 36; 16 Am. Dec., 632. *Ex Parte Mobley,* 2 Rich. Eq., 56. *Bouknight v. Epting,* 11 S. C., 71. The statutory marital right of property which the husband here seeks to assert is not essentially different from other legal property rights of the husband which our Courts have never hesitated to subordinate to the husband's marital obligations under controlling principles of equity jurisprudence. The judgment of the North Carolina Court was based upon a ground, viz.: the offering of such indignities to the person of the wife as rendered her condition intolerable, not essentially different from those which our Courts have held sufficient to justify the wife's separation and the award of alimony. *Levin v. Levin,* 63 S. C., 123; 46 S. E., 945. *Gordon v. Gordon,* 91 S. C., 245; 74 S. E., 360. *Dagnall v. Dagnall,* 100 S. C., 298; 84 S. E., 870.

The North Carolina Court, having jurisdiction of the person of the husband and of the matrimonial relation certainly in so far as it involved the subordination of the husband's marital rights in the wife's property to the discharge of his obligation to support, cherish, and protect his wife and child, had power to adjudicate and fix the measure of those rights. While its judgment could

have no efficacy to operate directly upon property beyond its jurisdiction nor to establish or divest title to land in another State, the doctrine that "a Court of Equity, having authority to act upon the person, may indirectly act upon real estate in another State through the instrumentality of his authority over the person," is well settled. *Bates v. Bodie,* 245 U. S., 520; 38 Sup. Ct., 182; 62 L. Ed., 444; L. R. A. 1918C, 355. *Fall v. Eastin,* 215 U. S., 1; 30 Sup. Ct., 3; 54 L. Ed., 65; 23 L. R. A. (N. S.), 924; 17 Ann. Cas., 853. *Corbett v. Nutt,* 10 Wall, 464; 19 L. Ed., 979. *Carpenter v. Strange,* 141 U. S., 87; 11 Sup. Ct., 960; 35 L. Ed., 647. *Hart v. Sansom,* 110 U. S., 151; 3 Sup. Ct., 586; 28 L. Ed., 101. In *Dull v. Blackman,* 169 U. S., 243; 18 Sup. Ct., 333; 42 L. Ed., 733, the Supreme Court of the United States, while recognizing that litigation in regard to real estate belongs to the Courts of the State where the land is located, said:

"Although if all the parties interested in the land were brought personally before a Court of another State, its decree would be conclusive upon them and thus, in effect, determine the title."

The North Carolina judgment may fairly be construed as having established a personal obligation on the part of the husband to renounce and convey to the wife any expectant marital interest in the wife's separate property wherever situated. Such a personal obligation to renounce could have been lawfully undertaken by contract either in North Carolina (Rev. § 2108; Consol. Stat., § 2516), or in this State (See *McClure v. Lancaster,* 24 S. C., 273; 58 Am. Rep., 259), and its performance enforced in either jurisdiction (*Polson v. Stewart,* 167 Mass., 211; 45 N. E., 737; 36 L. R. A. 771; 57 Am. St. Rep., 452. *Winter v. Winter,* 191 N. Y., 462; 84 N. E., 382; 16 L. R. A. (N. S.), 710). "A personal obligation goes with the person" (Mr. Justice Holmes in *Fall v. Eastin, supra*), and the person upon whom that obligation was devolved is here within

the jurisdiction of the Court.   To decree performance by giving to the North Carolina judgment the same force here it would have in that State to estop the husband from asserting any interest in the intestate property of his deceased wife is not only clearly within the power of a Court of Equity in this jurisdiction, but is in such consonance with the spirit of our marriage laws and the practice of our own Courts as fully to warrant the adoption of that course.

We, therefore, have no difficulty under the facts of this case in reaching the conclusion that such faith and credit should be extended to North Carolina judgment as will bar the appellant's claim.   He has preferred that claim in a Court of Equity, having in charge the distribution of the property involved.   He is not a resident and citizen of the State, the benefit of whose rigid nondivorce law he invokes. He is asserting a claim at the expense of his own child, a resident of the State, who at the commencement of this action was a minor and an orphan, entitled to the Court's special care and to the State's paternal protection.   This daughter, the offspring of a South Carolina marriage, stands in such privity with the deceased wife and mother, whose conduct in the discharge of the marriage obligations appears to have been blameless, as entitles her to assert as against the husband and father all the equities that the deceased wife and mother might have asserted in resisting a property right of the husband based solely upon the marital tie.   Granting that "a ground of equitable relief against a judgment is available in the State in which it is rendered as well as in other States" (*Roller v. Murray,* 71 W. Va., 161, 76 S. E., 172), the appellant here has adduced no evidence that even remotely tends to establish such a ground of relief.   There is not a scintilla of evidence tending to establish that he ever complied, in whole or in part, with the decree for alimony, in which both his wife and child were beneficially interested and in whose behalf an enforceable money demand in a very considerable sum on that

account is apparently outstanding against him.    19 C. J., 363, § 825; *Sistare v. Sistare,* 218 U. S., 1; 30 Sup. Ct., 682; 54 L. Ed., 905; 28 L. R. A. (N. S.),· 1068; 20 Ann. Cas. 1061.    It is not suggested that he ever offered or sought in good faith a reconciliation with· his wife, or that subsequent to the entry of the North Carolina judgment he ever recognized or pretended to discharge any marital or parental obligation imposed by the marriage bond.

On the contrary, he admits in his answer a course of conduct which has been considered by many reputable Courts as sufficient in itself to establish an equitable estoppel against the assertion of a martial right in the deceased wife's property.    The admitted facts that shortly after the rendition of the North Carolina judgment Tindall went to and became a resident of the State of Georgia, and there married another woman by whom he had at least one child during the life of Mrs. Tindall, furnish no sufficient basis, as we have seen. for indulging the presumption in our Courts that the second marriage was valid. · See *Hallums v. Hallums,* 74 S. C., 407; 54 S. E., 613.    But those facts under general principles may properly support a presumption that the second marriage was entered into after Tindall had sought and secured in the Courts of that State a decree purporting to dissolve the bonds of his South Carolina marriage.    See 2 Schouler on Marriage, Divorce, etc., (6th Ed.) c. 19, pp. 1475–1491.    Appellant's counsel in argument state that a divorce was in fact procured by Tindall.    While such a void judgment as a general rule neither binds nor bars any one, yet a party who procures such a judgment to be entered in his favor may not in good conscience be heard to impeach it.    19 C. J., 378, § 851; 15 R. C. L., 960, § 436.    Even where one who did not procure it accepts the benefits of a void judgment, he is estopped to assert its invalidity.    That doctrine has been applied in many cases to the conduct of a husband or wife who has obtained or accepted the benefits of a void divorce judgment.    See cases

cited, 19 C. J., notes 75–81, p. 378; notes 60 L. R. A., 307; 51 L. R. A. (N. S.), 536. The language of the Minnesota Court in the case of *Marvin v. Foster,* 61 Minn., 154; 63 N. W., 484; 52 Am. St. Rep., 586, is deemed sufficiently apposite to the case at bar to justify a somewhat extended excerpt from the Court's opinion. In that case the husband, Foster, left his wife in Minnesota and lived in another State without supporting her; his wife obtained a divorce that was void for want of a proper service; the husband then married again in another State; upon the death of his abandoned lawful wife, he attempted to assert his legal rights in the deceased wife's estate in Minnesota as her surviving husband. The Court said:

"Having violated every marital duty and obligation to the wife whose life he had blighted, he waits until death has ended her sufferings, and then, exhibiting a speculative mood, transfers his right in the property to this plaintiff. * * * Living with a second wife for fourteen years, and raising a child by her, during a period of time when he says that in law he was still the husband of the former wife, is too much of a mockery of law, a travesty upon justice, and insult to the morality and decency of a civilized government, to be tolerated; and, if there were no legal precedents against such a claim, we should not hesitate to establish one. Fortunately there are established rules of equity which come to our aid, and enable us to uphold the sacred obligations of the marital relation, and vindicate the sacredness of the family ties. The record in the case fully discloses the fact that Thomas Foster voluntarily accepted the privileges, benefits, and fruits of the void judgment of divorce, and he is thereby estopped from claiming any portion of the estate of his deceased wife. This estoppel refers, of course, to the property rights of Thomas Foster. Whether he could be punished for bigamy is not a question before us, and the question of all marital rights growing out of his conduct is not involved here, except so

far as the property immediately in dispute is concerned. The case is not one where there can be any collusion between the parties, for Hannah C. Foster is dead and the various rights and obligations growing out of the marriage relation between her and Thomas Foster are only considered with reference to his own conduct, so far as he claims a right to a share in her estate. * * * A void judgment of divorce cannot be legalized by the acts of the divorced parties, except so far as either one is estopped by his or her own wrongful conduct in enjoying its benefits, fruits, and privileges. Thus a party who has, as plaintiff, obtained a fraudulent judgment of divorce should not be permitted to enjoy its benefits, nor be allowed to assert its invalidity for his own advantage. So, too, the same rule should be applied to the defendant who, knowing of a void judgment of divorce against him, acquiesces in it for many years, treats it as valid, permanently renounces his marital obligations, remarries, and who has a child by a second marriage, and he should not be permitted to take advantage of his wrong. Good morals, as well as good law, forbid it. * * * As we have before intimated, and to avoid any chance for an impression that we lend any countenance to the idea that parties may become divorced upon the ground of estoppel by conduct, we repeat that this action is one relating solely to property rights, unaffected by any considerations which give to the marriage relation its precise status. The marriage relation between Foster and his deceased wife, with all its duties and obligations, has been terminated by her death; and he is now asserting this former relation, and the invalidity of the decree of divorce, solely for the purpose of obtaining her property. It is to such a state of facts, and in such an action, that we apply the doctrine of estoppel. Beyond this we do not go."

The same principle is announced and applied to essentially similar facts in *Ellis v. White,* 61 Iowa, 644; 17 N. W., 28. *Arthur v. Israel,* 15 Colo., 147; 25 Pac., 81; 10

L. R. A., 693; 22 Am. St. Rep., 381. *Mohler v. Shank,* 93 Iowa, 273; 61 N. W., 981; 34 L. R. A., 161; 57 Am. St. Rep., 274. *Starbuck v. Starbuck,* 173 N. Y., 503; 66 N. E., 193; 93 Am. St. Rep., 631. The case at bar, it will be observed, presents inferentially an additional element of equitable estoppel not present in any of the cases cited. The unwitnessed paper writing expressing Mrs. Tindall's last wishes clearly indicates that she was under the impression that her recreant husband had and could assert no interest in her separate property. That informal paper is introduced with the statement: "All my belongings * * * is now Edna's," etc. But for that belief, induced, as may fairly be inferred, by the husband's course of conduct under 'the North Carolina judgment and by his marrying again in Georgia, Mrs. Tindall would doubtless have executed a valid will, thereby putting the inheritance of her child beyond question. See *Jennings v. Harrison,* 33 S. C., 209; 11 S. E., 695. *Bull v. Rowe,* 13 S. C., 370. *McDowell v. McDowell,* 141 Iowa, 286; 119 N. W., 702; 31 L. R. A. (N. S.), 176; 133 Am. St. Rep., 170. In any view, the record discloses not the slightest basis on which the appellant may claim equitable relief against the enforcement of the bar of the North Carolina judgment.

In the writer's opinion—a view, however, to which the other members of the Court are not hereby committed—the facts considered independently of any force which may properly be attributed to the North Carolina judgment are such as should be held to bar the appellant's claim under the doctrine of equitable estoppel. The reasons for not applying the principle of estoppel in the case of *McCreery v. Davis, supra* (where the legal right of dower supported by the valuable consideration of marriage had already attached when the invalid divorce was procured; where the wife who had obtained the divorce had not remarried; where both parties to the marriage relation were alive and the resumption of that relation a possibility; and where there was no evi-

dence establishing the wife's culpable responsibility for the separation), are wholly absent in the case at bar. But whether or not the conduct of the husband, considered apart from the North Carolina judgment, be regarded as sufficient in itself to create an estoppel, there can be no doubt that the conduct is such as strongly to reinforce the righteousness of the conclusion that the North Carolina judgment should be held effectually to estop and bar the appellant from asserting as a husband any right of property in the intestate estate of his deceased wife in this State.

The decree of the Circuit Court is, accordingly, affirmed.