EDUARDO ACEVEDO VÁZQUEZ, Plaintiff and Appellant, *v.* ELEANOR MATHEOSSIAN, known as ELEANOR ACEVEDO, Defendant and Appellee.

No. 6924. Argued February 19, 1936.—Decided July 23, 1936.

*La Costa & La Costa* for appellant. *José Veray, Jr.* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Eduardo Acevedo Vázquez filed this suit for divorce in October 1931. He alleged that his wife had voluntarily aban-

doned the home December 18, 1929. Defendant denied the averment as to voluntary abandonment and alleged as an affirmative defense: That Acevedo, in February 1930, had deserted defendant without cause or justification and had refused to supply her with the necessaries of life; that in May 1930, defendant had brought an action in New York for a legal separation from plaintiff herein on the grounds of desertion, cruelty and non-support; that plaintiff herein appeared in the said action and by his attorneys answered the complaint and among other defenses charged defendant herein with unfaithfulness, an issue which in accordance with the New York procedure was submitted to a jury, and the jury decided such issue in favor of defendant herein and against plaintiff herein in consequence whereof the corresponding order was entered and plaintiff herein was ordered to pay to defendant herein $11.00 a week as alimony and $100 in costs; that plaintiff herein has not complied with the order of the New York court which adjudged him to be guilty of contempt and ordered his arrest, an order which could not be carried out because plaintiff herein had left the state of New York.

At the trial in the district court, Acevedo testified: That he and his wife were not living together because she abandoned the home December 18, 1929, that at the time of the abandonment they were living at 236 Bergen Street, Brooklyn; that the abandonment was entirely voluntary; that his behavior toward her was good; that he had commissioned various friends for the purpose of convincing her that she should return and had personally tried to advise her; that the friends referred to were Augusto Font, Ismael Calderón, Salvador Grajales and Cruz Vaz Pérez; that the result of these efforts was negative; that these friends visited witness on Christmas Day and invited him to a party at the house of Calderón.

404

Witness then identified and his attorney offered in evidence a letter dated July 8, 1929, from an attorney of a legal aid society which reads as follows:

"Mrs. Eleanor Acevedo,
236 Bergen Street,
Brooklyn.
Dear Madam:
"I wrote you a short time ago in reference to the trouble that exists between you and your husband, Mr. Edward Acevedo, but have received no reply. You cannot avoid your obligations by remaining silent, and if it is necessary to take this matter to court, it will be to your disadvantage. My reason for wishing you to call on me is that I think some fair settlement can be reached in this way. Will you kindly make it a point to call at this office at your earliest convenience?

"Yours very truly,
"Leonard McGee,
"Attorney for the Legal
Aid Society."

This letter was admitted in evidence over the objection of counsel for defendant. It was clearly inadmissible. It could not be considered as evidence of the husband's efforts to induce the wife to return after her alleged abandonment of the home because, although drafted in the presence of the husband and at his instigation, it was written several months before the alleged desertion and addressed to the wife at the place where husband and wife were living together at the time. From the statement of the case and opinion filed by the district judge we take the following extract (italics ours):

"From the admissions made by the defendant in her answer, and from the proof offered, the following facts have been proved, to the entire satisfaction of the Court: that the plaintiff lived in this island for a year prior to the filing of the complaint in this case; that the plaintiff and the defendant were married in Kings County, State of New York, on June the 26th, 1926; that the defendant, without any justified cause or motive, voluntarily abandoned the plaintiff since December 18th, 1929, *refusing to return to him, notwithstanding the frequent attempts made by plaintiff, through his friends,*

*through letters and through an institution named "Legal Aid Society",* to persuade her to desist from the abandonment and resume the conjugal relations with him and that from that marriage a daughter named Ana Luisa was born and that the daughter, who is now seven years old, more or less, now lives with the plaintiff in Puerto Rico."

On cross examination, plaintiff volunteered the information that, prior to the date of the wife's alleged abandonment, she had come home drunk after twelve o'clock at night. From the re-direct examination we take the following two questions and answers:

"Q.—And to the questions of the colleague you answered that, before the abandonment took place, she came home drunk?

"A.—Yes, sir, after mid-night.

"Q.—And that was the motive which compelled you to go to the Legal Aid Society?

"A.—Yes, sir, and there is the letter which they sent to her."

The only other letter that could have any bearing on plaintiff's personal efforts to persuade his wife to return was a communication dated December 31, 1930, which reads as follows:

"Mrs. Eleanor Acevedo,
183 Wyckoff Street,
Brooklyn, New York.

"I have definitely established my residence in Porto Rico and will never return to New York. Ana Luisa is getting along nicely. You are well aware of the fact of the immoral nature of your conduct and the fact of your desertion admits no argument. However, if you come to Porto Rico, we may then consider the terms of a reconciliation.

Respectfully,
(Signed) Eduardo Acevedo."

Salvador Grajales and Ismael Calderón testified in part as follows:

GRAJALES.

"Q.—Who abandoned whom?

"A.—Well, according to the information I obtained on December the 25th, when I, with a group of friends, went. . . .

"Q.—Of what year?

"A.—1929. A group of friends went to invite him. . . .

"Q.—Where did you go?

"A.—236 Bergen Street.

"Q.—Who went there to invite him?

"A.—Rafael Calderón, Ismael Calderón, Augusto Font, Cruz Vaz Pérez and myself.

"Q.—When did you go to invite him?

"A.—December the 25th, 1939, from four to five o'clock p. m.

"Q.—And how did you find Eduardo Acevedo?

"A.—When we arrived at his home, we found him quite sad and alone in his house, and we asked him as to why he felt that way and then he told us that his wife had left him a week previously, that is, since December the 18th, and that he did not feel like going to any party, due to that reason.

"Q.—Were you very close friends?

"A.—We have been friends since we were kids.

"Q.—Did he at any time tell you to see her so as to try to get her to return to his home?

"A.—That day we stayed for about half an hour there, and during the conversation he asked us to do him a favor, to go to her at his mother-in-law's house.

"Q.—Where was that?

"A.—183 Wyckoff St., and he asked us that, if we saw her there, we should beg her to return and live with him again.

"Q.—Did you have any opportunity of talking with her?

"A.—When we left Eduardo Acevedo's home that day, we went to his mother-in-law's house, but we did not find her there; the old lady was alone; then, on another occasion, in Roseland Palace, a 'dancing' located in Harlem, I saw her in the company of a man; I talked with her there and I told her what he had told me; and I could talk with her in that manner because I knew her, and then she answered that she was young and that she wished to enjoy life and that she was not willing to return to live with him."

### CALDERÓN

"Q.—Why don't they live together? Who abandoned whom?

"A.—In accordance with the information I obtained, she abandoned him.

"Q.—How did you obtain that information, and when did Eduardo Acevedo's wife abandon him?

"A.—Well, Eduardo Acevedo and I have always been very close friends, and I gave parties in my house in New York; I am married and when I lived in New York I gave parties in my home and I remember. . . .

"Q.—Are you from this city, Aguadilla?

"A.—Yes, sir.

"Q.—And Eduardo Acevedo, also?

"A.—Yes, sir, and every time a dance was held at my home, I went to invite him and his wife, and on December 25th, 1929, I went with a group of friends to invite him to a fine dance we were going to have.

"Q.—Did you go to his own home?

"A.—Yes, sir, and then the group of friends went to his home and we found him there, alone, and he told us that it was impossible for him to go to the party, due to the condition in which he was, that he was very sad, and then he told me that his wife had abandoned him.

"Q.—Did he tell you how long ago he had been abandoned by his wife?

"A.—He told me that she had abandoned him six or seven days before that.

"Q.—Did you, in your capacity as a friend, make any attempts, at his request, to persuade her to return to his home?

"A.—Yes, sir, he advised us, or rather, he begged us, to do everything possible to determine if she wished to return to their home. .

"Q.—Did you see her?

"A.—Yes, sir.

"Q.—Where did you see her?

"A.—Well, I did not see her on that day; that day we went to the home of his mother-in-law.

"Q.—Where was that?

"A.—In 183 Wyckoff St., but she was not there, and then we decided to return to New York; later I saw her in Central Park, riding on a boat on a lake at 110th Street; there I saw her with a young man.

"Q.—Did you talk with her?

"A.—Yes, sir, I waited until she finished her boat-ride, and then I called her aside, after I had asked permission from the young man, and then I accompanied her and asked her why she had abandoned Eduardo and I suggested that she go back to her home, because they already had a child and should not live apart, but she made me un-

derstand that she no longer loved Eduardo; that Eduardo did not like parties but that she was a girl who liked to dance quite a lot and to enjoy life.

"Q.—Did you visit them when they lived together?

"A.—Yes, sir.

"Q.—How did Eduardo Acevedo behave towards his wife?

"A.—He was a home-loving young man; he behaved very well with her."

Plaintiff himself testified that his wife had brought the action for a legal separation in anticipation of a suit for divorce by him which he had threatened to bring against her on the ground of adultery. He also said that after her alleged abandonment of the home he had spent some $500 with the Greater New York Detective Agency in a futile effort to obtain some substantial evidence of such adultery.

The husband's appeal to the Legal Aid Society and the tone of that society's letter to the wife point to a domestic situation which militates strongly against the husband's statement that the wife's abandonment of the home was entirely voluntary. The natural tendency of the husband's threat to file a suit for divorce on the ground of adultery, which precipitated the wife's action for a legal separation, was to stimulate and strengthen any thought that the wife may have had of making the separation permanent. The husband's letter of December 31, 1930 reiterated the unproved and apparently unfounded charge of adultery in its reference to the "immoral nature" of the wife's conduct. The statement that if the wife should come to Puerto Rico the terms of a possible reconciliation might then be considered was not a cordial, unconditional invitation to come to Puerto Rico and to resume marital relations. There was no offer of travelling expenses, no assurance that a reconciliation could be effected on any terms and no assurance of a home awaiting her even in the event of such reconciliation. The failure of the wife to respond at once to the suggestions of Grajales and Calderón was not sufficient evidence of a fixed

determination to make the separation permanent. Putting out of view for a moment the action for a legal separation, it might well be argued that if a motion for non suit had been made when plaintiff rested his case, it should have been granted. In any event, the judgment must be reversed for other reasons.

Defendant testified by a deposition taken in New York: That she lived with Acevedo until February, 1930; that since that date she was separated from her husband, not because she abandoned him, but because he abandoned her; that her husband deserted her in February, 1930, in New York; that in May, 1930 she commenced an action in New York against her husband for legal separation because of abandonment, cruel treatment and non-support; that the Supreme Court on February 29, 1932, rendered judgment in her favor, including alimony to the amount of $11.00 a week and arrears of alimony in the sum of $674.00 and awarded her the custody of the child; that Acevedo has not paid any part of the judgment and when he left New York he took the child with him.

From a certified copy of the judgment introduced in evidence at the trial herein, it appears that in an action for separation from bed and board brought by the wife in the County of Kings, New York, a summons and a verified complaint were personally served upon Acevedo; that he appeared in the said action by his attorneys and answered the complaint, denying some of the allegations contained therein, setting up, by way of counter claim, that plaintiff had committed certain acts of adultery and praying for a decree in his favor dissolving the marriage; that an issue had been framed for a jury trial of the charge of adultery; that the jury answered the questions submitted to them in favor of the wife and found that she had not committed the acts of adultery alleged in the counter claim; that the court confirmed the findings of the jury and the wife's case for sep-

aration, having come on for trial, one of the justices of the Supreme Court, after hearing the evidence offered by her, found that Acevedo had abandoned her on or about December 26, 1929; that he had contributed nothing for her support and maintenance since that date and that he had committed the acts of cruelty alleged in the complaint; that the decree of separation from bed and board was entered because of abandonment, non-support, cruelty and inhuman treatment by Acevedo.

Sections 421 and 422 of the Code of Civil Procedure read as follows:

"Section 421.—The effect of a judgment or final order in an action or special proceeding before a court or judge of Porto Rico, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows:

.    .    .    .    .    .    .    .    .    .

"2. In other cases the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.

"Section 422.—Other judicial orders of a court or judge of Puerto Rico, or of the United States, create a disputable presumption, according to the matter directly determined, between the same parties and their representatives and successors in interest by title subsequent to the commencement of the action of special proceeding, litigating for the same thing under the same title and in the same capacity."

If the New York judgment was not a complete bar to the husband's action in Puerto Rico, it created, at least, a strong presumption in the wife's favor on the question of abandonment (already decided in her favor as plaintiff in the action for separation) and that presumption (if it was no more than a presumption) was not overcome by the evidence for plaintiff herein.

Reference may be made in this connection to the following authorities: *Thompson* v. *Thompson,* 226 U. S. 551; *Harding* v. *Harding,* 198 U. S. 317; *Barber* v. *Barber,* 21 How. 582; *Miller* v. *Miller,* 150 Mass. 111; *Kelly* v. *Kelly,* 87 S. E. 657; *Zavaglia* v. *Notarbartolo,* 137 La. 722, 69 So. 152; *Schepel* v. *Schepel,* (S. C.) 118 S. E. 178; 4 A.L.R. 858.

The judgment appealed from must be reversed and the case dismissed.

Messrs. Justices Córdova Dávila and Travieso took no part in the decision of this case.